FILED

2010 May-25  PM 01:13
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **ELLIS M. HAMMONDS,** individually and by an through his Next Legal Friend, **NORMAN E. HAMMONDS**, | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **2:07-cv-00349-JEO** |
| **UNITED STATES OF AMERICA**, through its agents, servants and employees or agents, servants and employees of its agency, | ) ) ) ) | |
| **Defendant**. | ) | |

## <u>MEMORANDUM OPINION</u>

Before the court is the Plaintiff's Motion to Alter or Amend the court's Judgment of August 28, 2009 (doc. 36), filed on September 10, 2009. (Doc. 38). For the reasons explained herein, the motion is due to be denied.

On August 28, 2009, this court granted summary judgment to the Defendant, the United States of America (hereinafter "Defendant"), on the claim of the Plaintiff, Ellis M. Hammonds (hereinafter "Plaintiff"), for negligence pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671. Specifically, Plaintiff alleged that he contracted bacterial endocarditis following a dental procedure he underwent at the Veterans Administration Medical Center in Birmingham, Alabama on November 3, 2005. Plaintiff sued Defendant for the actions of Dr. Rex Adams, the dentist who attended that procedure, because he allegedly failed to properly administer "the proper antibiotic prophylactic treatment," which he claims would have prevented him from developing bacterial endocarditis.

According to the record below, the standard of care for the dental procedure was that

Plaintiff, who had a history of hip replacement surgery, should take two grams of Amoxicillin one hour prior to the procedure to prevent infection to his replacement hip.  The court found that Plaintiff had presented a question of fact whether Dr. Adams had followed this standard. However, the court stated that this was not a question of *material* fact, because even if Dr. Adams failed to follow that standard, the injury Plaintiff suffered, bacterial endocarditis, was not foreseeable at the time of the procedure.  This was because Plaintiff had no history of heart problems that should have placed Dr. Adams on notice of the risk for bacterial endocarditis. Finding that Dr. Adams had no duty to Plaintiff to prevent this unforeseeable injury, the court entered judgment for the Defendant.

In moving to vacate that judgment, Plaintiff argues that the court erred by concluding that Dr. Adams had no duty beyond that of preventing infection to his replacement hip.  He posits that it does not matter whether Dr. Adams could foresee his specific injury of bacterial endocarditis; according to Plaintiff, what matters is that Amoxicillin is designed, *in general*, to prevent many kinds of infection, including infection to Plaintiff's hip replacement joint as well as bacterial endocarditis.  Therefore, by failing to properly administer the antibiotic, it was foreseeable that Plaintiff would develop any one of these infections, even if Plaintiff was prescribed the antibiotic to prevent only one of them.  On that basis, Plaintiff argues that Dr. Adams had a *general* duty to protect him against all of these infections, and the fact that Plaintiff developed one of them constitutes a breach of that duty.

The court has expressly declined to impose such a general duty, and held that Dr. Adams' duty was to prevent only the injury that was foreseeable to him at the time of the dental procedure, i.e., infection to Plaintiff's hip replacement joint.

2

Plaintiff attempts to circumvent this conclusion by citing to a plethora of cases not offered in its original response, none of which is directly on point with this action.  The most persuasive of these is *Lockridge v. Oakwood Hospital*, 777 N.W.2d 511, 2009 WL 2574163 (Mich. App. Aug. 20, 2009).  There, a boy presented to the emergency room with chest pain, difficulty breathing, and other symptoms.  The physician diagnosed him with anxiety and hyperventilation, prescribed Valium, and discharged him.  The boy died later that night from an aortic dissection.  Expert testimony revealed that, even though the doctor had no reason to assume the boy had an aortic dissection *per se*, the boy's symptoms should have alerted the doctor to the need for a chest x-ray, which would have revealed the aortic dissection.

According to Plaintiff, *Lockridge* stands for the proposition that it should not matter to the court that Dr. Adams did not foresee the specific risk of endocarditis.  *See Lockridge*, 2009 WL , *2 ("in a typical negligence case, a 'plaintiff need not establish that the mechanism of injury was foreseeable or anticipated in specific detail. It is only necessary that the evidence establishes that some *injury* to the plaintiff was foreseeable or to be anticipated.' *Schultz* [*v. Consumers Power Co.*], [443 Mich. 445], 452 n. 7, 506 N.W.2d 175" (emphasis added). ).  The fact that Plaintiff needed an antibiotic in the first place should have placed Dr. Adams on notice that, if he failed to properly administer the antibiotic, he was exposing Plaintiff to any one of the infections the antibiotic was designed to prevent.

The court disagrees with this reading of *Lockridge* and finds Plaintiff's reliance on that case to be misguided.  The court reads *Lockridge* as stating that a boy who presents with chest pain and difficulty breathing could foreseeably have some injury that would be revealed by a chest x-ray, and therefore, the doctor had a duty to order an x-ray in determining the cause of his

3

symptoms.  Applying the same reasoning here, Plaintiff's only "symptoms" that alerted Dr.

Adams to the need for antibiotic prophylactic treatment was his history of hip replacement

surgery, which placed him at risk for infection to that joint area.  However, the mere fact that

Plaintiff had a hip replacement does not render it automatically foreseeable that he might develop

*any* kind of infection that Amoxicillin was designed to prevent.  The court finds no basis in

*Lockridge* to vacate its judgment in favor of Defendant.

Plaintiff cites to one Alabama case[1] in which the court found a breach of duty by the

defendant.  *See Keeton v. Fayette County*, 558 So. 2d 884 (Ala. 1989) (county liable where jailer

placed teenager in adult jail cell, where teenager hung himself).  However, *Keeton* is

distinguishable from this case because there, the county provided special cells for juvenile

inmates *for the express purpose* of protecting teenagers from *any* risk of harm, including suicide.

Here, Dr. Adams did not administer the antibiotic to protect Plaintiff from *all* infections that

could be treated with Amoxicillin; were it not for Plaintiff's risk of developing infection to his

hip replacement joint, Dr. Adams would not have administered the antibiotic in the first place.

Based on the foregoing, the court finds no basis in Plaintiff's motion to vacate, alter, or

amend its judgment of August 28, 2009.  Accordingly, it is due to be denied.  An appropriate

order will be entered.

**DONE** this the 25th day of May, 2010.

*John E. Ott*

**JOHN E. OTT**
United States Magistrate Judge

---

[1]Plaintiff also cites to *Smitherman v. McCafferty*, 622 So. 2d 322 (Ala. 1993); *Holt v. Lauderdale County*, *supra*; *Thompson v. Gaier*, 512 So. 2d 775 (Ala. 1987); and *Pritchett v. ICN Medical Alliance, Inc.*, 938 So. 2d 933 (Ala. 2006).  These cases were addressed by the court in its Memorandum Opinion on August 28, 2009.  Plaintiff offers no argument that would cause the court to revisit its analyses of those cases, and therefore it does not address those cases in this opinion.

4